Billy George HUGHES, Jr.

v.

Gary JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division.

No. CIV.A. G–97–537.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 15, 1998.

624

Michael Anthony Maness, Houston, TX, for Billy George Hughes, Jr., petitioner.

Elizabeth A. Martin, Office of Attorney General of Texas, Austin, TX, for Gary L. Johnson, respondent.

## ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS AND VACATING STAY OF EXECUTION

KENT, District Judge.

Before the Court are Petitioner Billy George Hughes' Petition for Writ of Habeas Corpus and Respondent's Answer and Motion for Summary Judgment. For the reasons that follow, Respondent's Motion for Summary Judgment is **GRANTED** and Petitioner's Writ of Habeas Corpus is **DENIED**. Therefore, the Stay of Execution granted by this Court on September 12, 1997 is hereby **VACATED**. A Certificate of Appealability ("COA") is not issued.

### I. FACTUAL SUMMARY

The following facts are taken from *Hughes v. State,* 897 S.W.2d 285 (Tex.Crim.App. 1994). Following a lengthy crime spree, on the evening of April 4, 1976, Billy George Hughes checked into the Days Inn Motel in Brookshire, Texas, using a stolen credit card.

After the clerk discovered that the credit card was stolen, she confronted Hughes in his room about it. While discussing the matter with Hughes, the clerk noticed a gun on his bed. The clerk immediately left Hughes' room to notify motel security of the gun. In the meantime, Hughes got into his stolen car and left heading west on Interstate 10. The clerk then called the police.

Texas Department of Public Safety ("DPS") Troopers Jack Reichert and Mark Frederick responded to the dispatcher's call, which had described Hughes and his car. After spotting Hughes and pulling him over, Trooper Frederick approached the driver's side of the vehicle. Trooper Reichert, while getting out of the patrol car immediately thereafter and approaching the vehicle, heard a muffled shot and saw Frederick grunt, lurch to the side, and fall to the ground. Reichert shot six times at Hughes' car as it immediately sped away. Frederick sustained a fatal wound from the encounter and was declared dead in an ambulance while *en route* to the hospital.

A vehicle containing numerous bullet holes and matching the description of the vehicle involved in the shooting incident was reported abandoned several miles from the scene of the offense. A search of the vehicle revealed a loaded, sawed-off shotgun and numerous other weapons and ammunition. Also found in the vehicle was a room key from the Days Inn Motel.

The ensuing search for Hughes took two and one-half days. Arriving by helicopter at a location where Hughes reportedly had been sighted, law enforcement officers found Hughes under a tree. Hughes initially pointed the weapon he was carrying at the helicopter, but later threw down the weapon and surrendered. The weapon discarded by Hughes was subsequently identified by ballistics experts as the revolver responsible for Trooper Frederick's death.

### II. PROCEDURAL HISTORY

After a second jury trial,[1] Hughes was convicted for the capital murder of Officer

---

1. Hughes was first convicted and sentenced to death on September 16, 1976; his first conviction was affirmed on appeal by the Texas Court of Criminal Appeals in *Hughes v. State,* 563

Mark A. Frederick on June 9, 1988 pursuant to Tex. Penal Code Ann. 19.03(a). At the punishment phase of trial, the jury answered affirmatively the three issues submitted pursuant to Tex. Code Crim. Proc. Ann. art. 37.071(b)(1), (2), and (3). Hughes was then sentenced to death.

Hughes' conviction and sentence were automatically appealed to the Texas Court of Criminal Appeals. That court affirmed his conviction in *Hughes v. State,* 897 S.W.2d 285 (Tex.Crim.App.1994). The United States Supreme Court then denied certiorari in *Hughes v. State,* 514 U.S. 1112, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995). On October 14, 1996, Hughes filed an application for state habeas corpus relief. The Texas Court of Criminal Appeals denied his request for relief, and his petition for certiorari was denied by the United States Supreme Court on October 14, 1997. Hughes was thereafter scheduled to die by lethal injection on September 19, 1997.

On September 10, 1997, Hughes filed with this Court a Motion to Stay his September 19, 1997 execution and at that time also filed a federal application for Writ of Habeas Corpus. Two days later, the Attorney General's office filed a notice of nonopposition to Hughes' Motion for Stay, stating that although Hughes did not show a likelihood of success on the merits of his constitutional claims, additional time was necessary to resolve the issues properly. Because Hughes' Petition, which is two hundred and thirty-two pages long and contains thirty-four grounds for relief, was filed only nine days before he was scheduled to be executed, this Court granted his Motion for Stay of Execution on September 12, 1997. *See Lonchar v. Thomas,* 517 U.S. 314, 116 S.Ct. 1293, 1297, 134 L.Ed.2d 440 (1996) (declaring that a stay of execution must be granted if the claims in the first habeas petition are not subject to summary dismissal and cannot be addressed on the merits before the date of execution).

## III. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the evidence is viewed through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). In this case, because Hughes' Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254,[2] that prism differs depending upon whether the issue is one of law, fact, or both. *See Drinkard v. Johnson,* 97 F.3d 751, 767–68 (5th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).[3] For questions of fact, habeas relief may be granted only if the Court finds that the state court made a determination of fact which was unreasonable in light of the evidence presented to it. *See* 28 U.S.C. § 2254(d)(2); *Drinkard,* 97 F.3d at 767–68. When reviewing such factual determinations, the Court must presume correct the factual findings of the state court, unless the Petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *Jackson v. Anderson,* 112 F.3d 823, 824–25 (5th Cir.1997), *petition for cert. filed,* (U.S. Sept. 26, 1997) (No. 97–6382). When considering questions of law, on the other hand, this Court may grant habeas relief only if the state court's determination of law is contrary to "clearly established" Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1); *Drinkard,* 97 F.3d at 768. Habeas relief generally may not be premised on rules of constitutional law that have yet to be

---

S.W.2d 581 (Tex.Crim.App.1978), *cert. denied,* 440 U.S. 950, 99 S.Ct. 1432, 59 L.Ed.2d 640 (1979). However, on March 18, 1987, the Texas Court of Criminal Appeals granted Hughes' application for post-conviction relief and reversed his conviction pursuant to *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), because a prospective juror had been improperly excluded. *See Ex Parte Hughes,* 728 S.W.2d 372 (Tex.Crim.App.1987).

**2.** The Fifth Circuit has determined that the AEDPA applies to cases where a petition for habeas corpus is filed on or after April 24, 1996. *See Williams v. Cain,* 125 F.3d 269, 274 (5th Cir. 1997).

**3.** *Drinkard* held that the AEDPA applies to those actions pending on April 24, 1996, the effective date of the AEDPA. That holding was effectively overruled by *Lindh v. Murphy,* — U.S. —, —, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997). *See* note 2, *infra.*

announced or that were announced after the challenged conviction became final. *See Teague v. Lane,* 489 U.S. 288, 305–07, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989). Finally, for mixed questions—that is, those containing issues of law and fact—relief is granted only if the state-court decision "is so clearly incorrect that it would not be debatable among reasonable jurists." *Drinkard,* 97 F.3d at 769; *see* 28 U.S.C. § 2254(d)(1) (providing that relief may be granted when a state-court decision involves an unreasonable application of clearly established law); *Carter v. Johnson,* 110 F.3d 1098, 1106–08 (5th Cir.)("With a mixed question of law and fact, the facts are presumed correct and then the law is reviewed for reasonableness, not *de novo.*"), *vacated on other grounds,* —— U.S. ——, 118 S.Ct. 409, 139 L.Ed.2d 313 (1997).

## IV. ANALYSIS [4]

Petitioner Hughes has asserted numerous allegations in his Petition for Writ of Habeas Corpus. The Court will address each claim as required. *See King v. McCotter,* 795 F.2d 517, 518 (5th Cir.1986)(per curiam)(remanding with instructions that a statement of reason be provided for the denial of each claim presented in petitioner's writ of habeas corpus); *Flowers v. Blackburn,* 759 F.2d 1195, 1195–96 (5th Cir.1985).

At the outset, the Court notes that the Supreme Court has upheld Texas' capital punishment scheme. *See Jurek v. Texas,* 428 U.S. 262, 273–74, 96 S.Ct. 2950, 2957, 49 L.Ed.2d 929 (1976); *In re West,* 119 F.3d 295, 296 (5th Cir.1997) ("The Supreme Court has upheld both the constitutionality of the

death penalty and Texas's capital sentencing procedures, and there has been no change in the law ...."); *see also Pulley v. Harris,* 465 U.S. 37, 53 n. 15, 104 S.Ct. 871, 881 n. 15, 79 L.Ed.2d 29 (1984).

### A. Petitioner's First Claim

In his first claim, Petitioner asserts that the evidence adduced at trial was constitutionally insufficient to establish beyond a reasonable doubt that he acted deliberately and with the reasonable expectation that Trooper Frederick's death would result.[5] Here, Petitioner challenges jury factual findings which were made during the punishment phase of trial, *after* the jury had already determined that his conduct fell within that narrow category constituting capital murder. In *Tuilaepa v. California,* 512 U.S. 967, 979–80, 114 S.Ct. 2630, 2638, 129 L.Ed.2d 750 (1994), the Supreme Court held that the sentencer has unbridled discretion to impose death at the punishment phase, so long as that discretion is not exercised in an arbitrary manner. The Court understands and generally agrees with Respondent's arguments that, under the circumstances and so long as the sentence is not arbitrary or capricious, no review is required of the jury's answers to the special issues under the teachings of *Teague.*[6] However, because the *ultimate* sentence is involved in this case, the Court will use an abundance of caution.

 Because Petitioner's first claim involves a mixed question of law and fact, this Court on habeas review asks whether the reviewing court reasonably applied the proper standard for review of factual determina-

---

4. The Supreme Court has declared that federal habeas relief may not be granted on rules of constitutional law yet to be announced. *See Teague,* 489 U.S. at 305–07, 109 S.Ct. at 1073. A fair reading of Petitioner's Writ of Habeas Corpus reveals that, at the least, claims 3–8, 13, 16–17, 22–21, 30–32 are precluded by *Teague.*

5. During the punishment phase of the trial, the jury answered affirmatively the three special issues submitted pursuant to the former TEX. CODE CRIM. PROC. ANN. art. 37.071. These issues are the requisite elements for imposing the death penalty. The issues read as follows:
 *Special Issue No. 1*
 Was the conduct of the [Petitioner] that caused the death of the deceased, Mark A.

Frederick, committed deliberately and with the reasonable expectation that the death of the deceased or another would result?
*Special Issue No. 2*
 Is there a probability that the [Petitioner] would commit criminal acts of violence that would constitute a continuing threat to society?
*Special Issue No. 3*
 Was the conduct of [Petitioner] in killing the deceased, Mark A. Frederick, unreasonable in response to the provocation, if any by the deceased?

6. *See* note 4, *supra.*

tions. Issues of fact are reviewed using the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). That standard asks "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See id.* A review of the Texas Court of Criminal Appeals' decision reveals an accurate articulation and reasonable application of the *Jackson* standard of review. The Court understands Petitioner's arguments that the evidence presented at trial could have resulted in a different conclusion by the trier of fact; however, looking at the evidence in the light *most favorable* to the prosecution, the Court of Criminal Appeals concluded that a reasonable juror could have deduced that Petitioner, having numerous reasons to fear being pulled over by DPS troopers following his cross-country crime spree, acted deliberately when he cocked his gun, pointed it, and pulled the trigger, thus killing Trooper Frederick. *See Hughes,* 897 S.W.2d at 290. The appeals court properly applied the correct standard, respecting the exclusive province of the jury to determine the credibility of witnesses, to resolve evidence conflicts, and to draw reasonable inferences from proven facts. *See Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995). Petitioner's first claim fails.

### B. Petitioner's Second Claim

 In his second claim, Petitioner contends that the evidence was constitutionally insufficient to support the jury's finding that a probability existed that he would commit future acts of violence and that he therefore constituted a continuing threat to society. Again, this Court simply reviews the reasonableness of the appellate court's application of the *Jackson* standard. In reviewing Petitioner's second claim, the Court of Criminal Appeals noted Petitioner's prior convictions, the testimony of his wife that he physically abused her, the string of crimes immediately preceding the murder, the collection of weapons he was carrying, Petitioner's plans for a future bank robbery, and his readiness to fire on officers. Again, the Court of Criminal

Appeals correctly applied the *Jackson* standard to the jury's factual determinations. *See Hughes,* 897 S.W.2d at 290. Because he neither alleges nor proves that the appeals court's decision was contrary to, or involved an unreasonable application of, prevailing Supreme Court precedent, Petitioner's second claim fails. *See* 28 U.S.C. § 2254(d)(1).

### C. Petitioner's Third, Fourth, Fifth, Sixth, Thirtieth, and Thirty–First Claims

In his third and fourth claims, Petitioner alleges that his death sentence violates the Eighth and Fourteenth Amendments because the evidence mitigating for life in his case far outweighed the aggravating evidence in support of death. In support of his arguments, Petitioner provides the Court with an exhaustive factual review of this mitigating evidence which he asserts was disregarded when his death sentence was imposed by the jury. Moreover, in Petitioner's fifth and sixth claims he argues that the statutory procedure used by the Texas Court of Criminal Appeals when reviewing capital sentences is constitutionally deficient. Petitioner acknowledges that Texas' capital sentencing scheme has been upheld by the United States Supreme Court, but contends that capital sentencing jurisprudence has evolved significantly since that time. Finally, in claims thirty and thirty-one, he argues that Texas' factual review of cases involving imposition of the death penalty differs from factual review of other cases, and therefore, violates the Equal Protection and Due Process Clauses. The gist of Petitioner's claims here is that it was error for the Court of Criminal Appeals to fail to review the aggravating and mitigating evidence *de novo.*

 A capital sentencing scheme does not violate the Eighth Amendment if the sentencing authority finds at least one aggravating factor, and weighs that factor against the mitigating factors offered by the defendant. *See Gregg v. Georgia,* 428 U.S. 153, 206–07, 96 S.Ct. 2909, 2941, 49 L.Ed.2d 859 (1976). A capital sentencing scheme must "circumscribe the class of persons eligible for the death penalty" by permitting execution

only where specified aggravating circumstances are present. *See Zant v. Stephens,* 462 U.S. 862, 871–72, 103 S.Ct. 2733, 2740, 77 L.Ed.2d 235 (1983). The narrowing function in the Texas scheme occurs at the guilt-innocence phase rather than the sentencing stage. *See Lowenfield v. Phelps,* 484 U.S. 231, 245–46, 108 S.Ct. 546, 555, 98 L.Ed.2d 568 (1988); *cf. California v. Ramos,* 463 U.S. 992, 1008, 103 S.Ct. 3446, 3457, 77 L.Ed.2d 1171 (1983) ("Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty ... the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment").

▮ In light of established precedent, Petitioner's argument that the appeals court should have veered from the *Jackson* standard and conducted a proportionality review of the mitigating and aggravating evidence lacks merit. Although it is clear that meaningful appellate review is constitutionally required, such review is provided when an appellate court, as here, provides prompt, automatic review of a death sentence, ensuring that the narrowing function of its death penalty scheme was adequately performed. *See Pulley,* 465 U.S. at 49–50, 104 S.Ct. at 881. In fact, the Texas scheme used here provides additional safeguards arguably not constitutionally required because it utilizes the *Jackson* standard when reviewing those factual determinations made even *after* the jury has found guilt and the narrowing function has occurred, *i.e.,* those findings of "deliberateness" and "future dangerousness." Moreover, as previously stated, Texas' sentencing scheme has been upheld by the Supreme Court. Simply put, Supreme Court jurisprudence reveals that a *rebalancing* of aggravating and mitigating factors is not constitutionally required. *See Pulley,* 465 U.S. at 49–50, 104 S.Ct. at 881; *Tuilaepa,* 512 U.S. at 979–80, 114 S.Ct. at 2640 ("The sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it is found the defendant is a member of the class made eligible for a death sentence."); *see also Sawyer v. Whitley,* 505 U.S. 333, 345, 112 S.Ct. 2514, 2522, 120 L.Ed.2d 269 (1992).

Although not constitutionally required to conduct either a legal or *de novo* review of the evidence presented during the punishment phase, the Texas Court of Criminal Appeals essentially conducted such a review when it looked at the sufficiency of the evidence supporting the special issues. *See Hughes,* 897 S.W.2d at 290–91, 293–94. Petitioner fails to present the Court with any evidence overlooked that is capable of undermining those factual determinations. *See* 28 U.S.C. § 2254(d).[7]

[10, 11] Petitioner's due process and equal protection claims, thirty and thirty-one, also lack merit. Petitioner's due process rights were protected in this case—Petitioner was found guilty of murder and at least one aggravating factor was found by the jury as required by Supreme Court precedent. *See Lowenfield,* 484 U.S. at 244–46, 108 S.Ct. at 554. Moreover, Petitioner's equal protection claim is one that has not been previously recognized; therefore, this Court is precluded from creating such a right. *See Teague,* 489 U.S. at 305–07, 109 S.Ct. at 1073. Because the appeals court's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, Petitioner's third, fourth, fifth, sixth, thirty, and thirty-first claims fail. *See* 28 U.S.C. § 2254(d)(1).

### D. Petitioner's Seventh and Eighth Claims

▮ Twelve years elapsed between the date of Trooper Frederick's murder and the conclusion of Petitioner's second trial in 1988. In Petitioner's seventh claim he argues that because the jury in his second trial relied upon aggravating evidence that was more than twelve years old—that is, factual evidence of his future dangerousness which

---

7. The Court of Criminal Appeals declared that no review of this evidence was required; even so, they weighed such evidence finding that the mitigating factors pointed to by Petitioner did not overwhelmingly outweigh the aggravating factors in support of the jury's verdict. *See Hughes,* 897 S.W.2d at 294.

transpired prior to his initial imprisonment, the imposition of the death penalty is based on evidence that is inherently unreliable. In Petitioner's eighth claim, he argues that, in light of his twenty-two years of post-conviction prison behavior, he is entitled to a re-assessment of his future dangerousness because his conduct now reveals that the jury's finding was incorrect.

■ The Supreme Court has stated that when imposing the death sentence, a review of a defendant's "significant criminal record, if any, and the range and severity of his prior criminal conduct" should be conducted. *See Jurek*, 428 U.S. at 271, 96 S.Ct. at 2956. Moreover, "all possible relevant information about the individual defendant" should be presented to the decision maker. *See id.* at 263, 96 S.Ct. at 2952. In Petitioner's case, the jury was presented not only with his conduct prior to entering prison, but also with his conduct once institutionalized. The Court finds that such evidence is reliable as required by *Simmons v. South Carolina*, 512 U.S. 154, 163, 114 S.Ct. 2187, 2193–94, 129 L.Ed.2d 133 (1994)("The defendant's character, prior criminal history, mental capacity, background, and age are just a few of the many factors, in addition to future dangerousness, that a jury may consider in fixing appropriate punishment."). Indeed, Petitioner himself presented evidence of his childhood during the punishment phase—evidence "older" than that he claims is inherently reliable. The evidence presented during the punishment phase of Petitioner's trial is exactly the kind of evidence that the Supreme Court insists must be used before the death penalty can be imposed. *See Skipper v. South Carolina*, 476 U.S. 1, 5, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986)(Powell, J., dissenting)(noting that "[c]onsideration of a defendant's past conduct as indicative of his probable future behavior is an inevitable and not undesirable element of criminal sentencing"); *see also Jurek*, 428 U.S. at 274, 96 S.Ct. at 2957.

■ Supreme Court precedent establishes that a defendant's future dangerousness is determined at the *time* of sentencing. *See, e.g., Jurek*, 428 U.S. at 274–75, 96 S.Ct. at 2957–58. The Supreme Court has never held that a death-row defendant is entitled to

another future dangerousness determination several years after his conviction. Such a finding today would establish a "new rule" not dictated by Supreme Court precedent at the time of Petitioner's conviction and would therefore violate the mandate of *Teague* that habeas relief may not be premised on unestablished constitutional law. *See Teague*, 489 U.S. at 305–07, 109 S.Ct. at 1073. Even so, during his second trial, Petitioner presented evidence of his good conduct while on death row prior to the overturning of his first conviction; this evidence was repeatedly emphasized during closing arguments. As they are entitled to do, the jury apparently disregarded this evidence. Petitioner's seventh and eighth claims therefore fail.

### E. *Petitioner's Ninth, Tenth, Eleventh, Twelfth, Nineteenth, and Twentieth Claims*

In Petitioner's ninth, tenth, eleventh, twelfth, nineteenth, and twentieth claims, he raises various errors pursuant to *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In *Penry*, the Supreme Court concluded that "the jury must be able to consider and give effect to any circumstances of the crime" in order to eliminate the "'risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty.'" *Id.* at 327–28, 109 S.Ct. at 2951–52 (quoting *Lockett v. Ohio*, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978)). Specifically, Petitioner argues that TEX. CODE CRIM. PROC. art. 37.071(b) is unconstitutional as applied to him because it does not permit the jury to consider and give mitigating effect to his evidence of mental illness and emotional disturbance during the time surrounding the murder, and also because it requires a concurrence of ten or more before any penalty question can be answered negatively. Petitioner also argues that the trial court's instructions to the jury misplaced the burden of proof by requiring him to prove the existence of mitigating circumstances. He argues further that the trial court's failure to instruct the jury to give mitigating effect to his evidence of mental illness and emotional disturbance was error. Finally, he contends that the trial court erred

when it instructed the jury that it could not give effect to Petitioner's mitigating evidence without a ten-juror concurrence.

The claims raised here are verbatim to those presented to the Texas Court of Criminal Appeals. Like that court, this Court finds that Petitioner has not identified the mitigation evidence at issue in these claims. *See Hughes,* 897 S.W.2d at 298–300. Moreover, like the appeals court, this Court assumes the mitigating evidence to which Petitioner is referring is his conduct in prison, his crime-free existence during the first twenty-one years of his life, and his alleged unstable emotional state prior to the murder. *See id.* at 298.

■■■ In *Johnson v. Texas,* 509 U.S. 350, 367–68, 113 S.Ct. 2658, 2668, 125 L.Ed.2d 290 (1993), the Supreme Court held that Texas' punishment scheme allows adequate consideration of mitigating evidence. *See also Franklin v. Lynaugh,* 487 U.S. 164, 178, 108 S.Ct. 2320, 2329, 101 L.Ed.2d 155 (1988).[8] Moreover, the Fifth Circuit has expressly stated that the mitigating force of the type of evidence proffered here by Petitioner can adequately be given effect under the Texas scheme. *See Graham v. Collins,* 950 F.2d 1009, 1032 (5th Cir.1992), *aff'd,* 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993). The jury was told that, in answering the special issues, it could consider all the mitigating evidence that had been presented during the guilt and punishment phases of Petitioner's trial. Thus, arguments regarding inadequate consideration by the jury of mitigating evidence are without merit.

The Fifth Circuit has held that *"Penry* does not invalidate the Texas statutory scheme, and that *Jurek* continues to apply, in instances where no major mitigating thrust of the evidence is substantially beyond the scope of all the special issues." *Graham,* 950 F.2d at 1027. Therefore, the relevant inquiry here is whether Petitioner's proposed instructions were subsumed by the special issues. The Texas Court of Criminal Appeals correctly found that the special instructions were sufficient and no *Penry* instruction was

required in this case. *See id.* Petitioner, however, does not attempt to show, as he is required to do, how the appeals court unreasonably applied clearly established law when it made this finding. *See* 28 U.S.C. § 2254(d)(1).

■■■ Petitioner argues that the trial court should have instructed the jury concerning his mental state before and during the murder. Subsequent to *Penry,* the Fifth Circuit explained that a state's refusal to give additional instructions does not amount to constitutional error unless there is a " 'reasonable likelihood that the jury applied the challenged instruction in a way that prevents the consideration of constitutionally relevant mitigating evidence.' " *Lackey v. Scott,* 28 F.3d 486, 489 (5th Cir.1994) (quoting *Johnson v. Texas,* 509 U.S. 350, 367, 113 S.Ct. 2658, 2668, 125 L.Ed.2d 290 (1993) (citation omitted)), *cert. denied,* 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995). Furthermore, in order to warrant an instruction, the mitigating evidence of the type at issue here must demonstrate a uniquely severe permanent handicap, or mental impairment of such severity and permanence to render it impossible for the defendant to ever learn from his mistakes. *See Turner v. Johnson,* 106 F.3d 1178, 1189 (5th Cir.1997); *Wilkerson v. Collins,* 950 F.2d 1054, 1060 (5th Cir.1992). Unlike the mental retardation and childhood abuse evidence at issue in *Penry,* any emotional disturbance alleged by Petitioner in this case is far from the level of mental and emotional impairment required to necessitate a *Penry* instruction. *See Tucker v. Johnson,* 115 F.3d 276, 281–82 (5th Cir.1997); *Cordova v. Collins,* 953 F.2d 167, 170 (5th Cir.1992). Moreover, the appeals court correctly applied the law in respect to Petitioner's arguments regarding Texas' punishment scheme and its required ten-juror concurrence before a negative answer to any special issue can be given. Arguments challenging the capital sentencing scheme used in Texas, which requires a ten-juror concurrence on mitigating evidence, have been squarely rejected by the Supreme Court. *See Walton v. Arizona,* 497

---

8. The Court notes that the Supreme Court has upheld article 37.071 as constitutional and not amounting to cruel and unusual punishment.

*See Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

U.S. 639, 649, 110 S.Ct. 3047, 3055, 111 L.Ed.2d 511 (1990)("A defendant's constitutional rights are not violated by placing on him a burden of proving mitigating circumstances sufficiently substantial to call for leniency."); *Jacobs v. Scott*, 31 F.3d 1319, 1328–29 (5th Cir.1994)("Under the Texas system, all jurors can take into account any mitigating circumstance."); *see also Wilcher v. Hargett*, 978 F.2d 872, 877 (5th Cir.1992). Far from being contrary to, or an unreasonable application of, clearly established federal authority, the appeals court strictly followed relevant Supreme Court precedent. Therefore, Petitioner's ninth, tenth, eleventh, twelfth, nineteenth, and twentieth claims fail.

### F. *Petitioner's Thirteenth and Fourteenth Claims*

■ Petitioner's thirteenth and fourteenth claims assert that the trial court's instructions concerning whether Trooper Frederick was acting in the lawful discharge of his official duties at the time of his death were erroneous. A person commits the offense of capital murder under TEX. PENAL CODE ANN. § 19.03(a)(1) by murdering an individual, known to be a peace officer, who is "acting in the lawful discharge of an official duty" at the time of death. Petitioner argues that the instructions given by the trial court assumed that Trooper Frederick was so acting. Moreover, Petitioner challenges on Fourth Amendment grounds the validity of the Troopers' action in stopping him, thereby arguing that the judge should have instructed the jury further on the issue of "lawful discharge." The trial court instructed:

> Before you can find the defendant guilty of capital murder, you must find from the evidence [that] ... at the time of the shooting, if any, the deceased, Mark A. Frederick, was then and there a peace officer acting in the lawful discharge of an official duty, and the defendant then and there knew, at the time of the shooting, if any, that Mark A. Frederick was a peace officer.

The trial court further instructed:

> If you believe from the evidence beyond a reasonable doubt, that on or about the 4th day of April, in Austin County, Texas, the defendant ... did then and there recklessly cause the death of Mark Frederick, a peace officer acting in the lawful discharge of an official duty, by shooting him with a gun, and the said [Petitioner], then and there knew that said Mark A. Frederick was a peace officer, then you will find the defendant ... guilty of capital murder .... but if you do not believe, or if you have a reasonable doubt thereof, you will acquit the defendant of capital murder and proceed to determine whether he is guilty of the lesser-included offense of murder.

■ An accused has a right to a jury determination, beyond a reasonable doubt, of every element of the offense charged. *See United States v. Gaudin*, 515 U.S. 506, 511, 115 S.Ct. 2310, 2314, 132 L.Ed.2d 444 (1995). "[A] judge may not direct a verdict of guilty no matter how conclusive the evidence." *United Broth. of Carpenters and Joiners of America v. United States*, 330 U.S. 395, 408–09, 67 S.Ct. 775, 782, 91 L.Ed. 973 (1947). It is clear from a fair reading of the jury instructions that the ultimate decision of whether Trooper Frederick was acting in the lawful discharge of his official duties was laid at the feet of the jury. The jury made that determination. Moreover, the appeals court correctly held that whether Petitioner's stop was constitutionally valid is irrelevant in determining whether Trooper Frederick was acting in the lawful discharge of his duties. *See Hughes*, 897 S.W.2d at 297; *see also United States v. Villarreal*, 963 F.2d 725, 730 n. 2 (5th Cir.1992) (noting that because a police officer was in an official patrol car, dressed in uniform, and investigating traffic violations, he was acting as a law enforcement official performing his official duties, despite allegations that his intentions were illegal). Therefore, no further instruction was required on this issue. Petitioner again fails to show how the appeals court's decision is contrary to, or unreasonably applies, federal law. *See* 28 U.S.C. § 2254(d)(1). Therefore, his thirteenth and fourteenth claims fail.

### G. *Petitioner's Fifteenth Claim*

■ Petitioner's fifteenth claim challenges the trial court's instructions of the words "intentionally" and "knowingly." In

the abstract portion of its charge, the trial court defined these terms using the full Texas Penal Code definitions:

> A person acts "intentionally," or without intent, with respect to the *nature of his conduct* or to a *result of his conduct* when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts "knowingly," or with knowledge, with respect to the *nature of his conduct* or to *circumstances surrounding* his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to *a result of his conduct* when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 1997).

■ Petitioner argues that the trial court's use of the "full" language from the Texas Penal Code was error. Specifically, because the offense at issue is a "result" or "circumstances surrounding" crime, Petitioner contends that the trial court's superfluous inclusion of the "nature of conduct" language provided the jury with an improper avenue through which a conviction, based on conduct alone, could result. That is, Petitioner argues that this inclusion may have resulted in a conviction based on an intention to shoot the pistol and an awareness of doing so, even if he did not intend to kill Trooper Frederick, or did not know what result would follow. The Texas Court of Criminal Appeals agreed that the trial court erred when it included this unneeded language, *see Hughes*, 897 S.W.2d at 295; however, that court declared that the trial court's error was not of constitutional dimension. This Court agrees. Moreover, this Court finds that, even if erroneous, no harm resulted from the inclusion of the unnecessary language. In *Rodriguez v. Johnson*, 104 F.3d 694, 699 n. 8 (5th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 2438,

138 L.Ed.2d 198 (1997), the Fifth Circuit distinguished the prejudice analysis, applicable here, from the "miscarriage-of-justice" analysis. "The prejudice analysis for allegedly defective jury instructions examines 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977)). As in *Rodriguez*, the Court finds that after looking at the charge as a whole, in the context of trial and including the arguments of counsel, there is no reasonable likelihood that the jury applied the instruction in a constitutionally impermissible manner. *See id.* at 699. Petitioner's fifteenth claim fails.

### H. Petitioner's Sixteenth and Seventeenth Claims

■ In Petitioner's sixteenth and seventeenth grounds for relief, he challenges the trial court's inclusion of an instruction on causation.[9] He argues that such inclusion, which was irrelevant to the case, allowed the jury to convict him on the basis of undesignated conduct and authorized a conviction on grounds not plead in the indictment. The Texas Court of Criminal Appeals agreed that the inclusion of the causation instruction was erroneous, but again, properly held that no harm accrued to Petitioner as a result of the instruction's inclusion. *See Hughes*, 897 S.W.2d at 296. Petitioner again fails to show, as he must here, how the appeals court's finding is contrary to, or an unreasonable application of, federal law. Indeed, like Petitioner's fifteenth claim, a review of established authority demonstrates the soundness of the appeals court decision. *See United States v. Boutte*, 13 F.3d 855, 859 (5th Cir.1994)(declaring that when there is no evidence of a particular, irrelevant element, its

---

9. The instruction stated:

> A person is criminally responsible if the result would not have occurred but for his conduct, operating alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:
> (1) a different offense was committed, or
> (2) a different person or property was injured, harmed, or affected.

inclusion in the abstract portion of the trial court's instructions is surplusage and thus, "does not create the risk of prejudice"). Petitioner's sixteenth and seventeenth claims fail.

### I. Petitioner's Eighteenth Claim

In his eighteenth claim for relief, Petitioner asserts an *ex post facto* violation, arguing that the jury's finding that he used or exhibited a deadly weapon during the murder was made pursuant to TEXAS CODE CRIM. PROC. ANN. articles 42.12 § 3(g) and 42.18 § 8(b), which were enacted after the commission of the alleged offense. In order to establish an *ex post facto* violation, Petitioner must show that he was disadvantaged by the law's application to him; some evidence of harm must be shown. *See Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). The Texas Court of Criminal Appeals correctly held that Petition had failed to show a disadvantage as required because the statutes at issue simply provided a mandatory minimum term of imprisonment in the event of an affirmative deadly weapon finding. *See Hughes,* 897 S.W.2d at 298. This Court agrees and observes that the statutes at issue were essentially irrelevant to Petitioner's crime. Moreover, even if he could, Petitioner again does not attempt to show how the decision of the appeals court was unreasonable. Petitioner's eighteenth claim fails.

### J. Petitioner's Twenty–First, Twenty–Second, and Twenty–Third Claims

In Petitioner's twenty-first through twenty-third claims, he argues that the trial court erred when it refused to instruct the jury that affirmative findings on the special issues would result in his death, that a failure to agree on the special issues by the jury would result in a sentence of life imprisonment, and that in the event he was sentenced to life, Petitioner would have to serve at least twenty years of that sentence without the possibility of parole. All of Petitioner's claims argued here have been squarely rejected by the Fifth Circuit. *See Webb v. Collins,* 2 F.3d 93, 94–96 (5th Cir.1993)("Both *Andres [v. U.S.,* 333 U.S. 740, 68 S.Ct. 880,

92 L.Ed. 1055 (1948)] and *Mills [v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384(1988)] [cases relied upon by Petitioner here] involve statutory schemes different from the Texas sentencing statute and different legal standards. Thus, ... *Teague* forecloses our consideration ...."); *Andrade v. McCotter,* 805 F.2d 1190, 1192–93 (5th Cir.1986); *see also Jurek,* 428 U.S. at 273–74, 96 S.Ct. at 2957. The Texas Court of Criminal Appeals so held. *See Hughes,* 897 S.W.2d at 300. This Court agrees. Petitioner's twenty-first, twenty-second, and twenty-third claims fail.

### K. Petitioner's Twenty–Fourth Claim

Petitioner's twenty-fourth request for relief argues that the trial court erred when it refused to instruct the jury on the definition of the word "probability." Petitioner concedes that established authority does not require such an instruction because it is presumed the jury will give the word its usual and customary meaning of "more likely than not." However, Petitioner argues that because a witness, which *Petitioner himself* asked the meaning of the word, responded with the definition of "any probability," an instruction was therefore required. Petitioner's claim fails for two reasons. First, a party may not generally complain of trial errors on appeal that he himself invited or provoked. *See United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 925, 137 L.Ed.2d 107 (1997). Moreover, as the Court of Criminal Appeals correctly held, *see Hughes,* 897 S.W.2d at 301, Petitioner did not preserve by objection this issue for review. *See United States v. Tomblin,* 46 F.3d 1369, 1386 (5th Cir.1995); *United States v. Musa,* 45 F.3d 922, 924 (5th Cir.1995); *United States v. Berry,* 977 F.2d 915, 918 (5th Cir.1992). When review of a constitutional claim is refused by a state court due to the failure of a defendant to follow state procedural rules, federal habeas review is also foreclosed, unless the petitioner can demonstrate cause for the default and actual prejudice, or that fundamental miscarriage of justice will result. *See Nichols v. Scott,* 69 F.3d 1255, 1266 (5th Cir.1995). Petitioner cannot meet this standard. However, procedural bar aside, Petitioner also cannot demonstrate the more le-

nient standard, that is: "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Because the Texas Court of Appeals properly applied the applicable standard and Petitioner fails to demonstrate that the appeals court's decision is contrary to, or an unreasonable application of, federal law, Petitioner's twenty-fourth claim fails.

 Thus, in regards to *all* of Petitioner's jury-instruction claims (13–24), when considering the instructions as a whole, the Court concludes that there is no reasonable likelihood that the jury could have construed the instructions in an improper manner. The appeals court properly applied this standard. Therefore, Petitioner is not entitled to relief. Alternatively, the Court finds that even if the giving of *any* of these challenged instructions could be viewed as a constitutional violation, Petitioner has failed to show that he is entitled to habeas relief because he does not meet the harmless-error standard as set forth in *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)(declaring that error must have a "substantial and injurious effect or influence in determining the jury's verdict"). *See* 28 U.S.C. § 211 ("On the hearing of any appeal or writ of certiorari, the court shall give judgment ... without regard to errors or defects which do not affect the substantial rights of the parties."); *see also Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

### L. Petitioner's Twenty–Fifth Claim

 In Petitioner's twenty-fifth claim he alleges that the trial court erred by allowing expert Dr. John Nottingham to testify about an April 1988 interview with Petitioner during the punishment phase of trial. Specifically, Petitioner argues that Dr. Nottingham's conclusions were tainted by an earlier, August 26, 1976 examination, where Petitioner had not been advised of his constitutional rights, in violation of *Estelle v. Smith,* 451 U.S. 454, 463–65, 101 S.Ct. 1866, 1873–74, 68 L.Ed.2d 359 (1981). Following an exhaustive review of the record and a comparison of Dr. Nottingham's 1976 report with his 1988 report, the Texas Court of Criminal Appeals determined that the conclusions proffered by the doctor at his second trial were expressly premised on his 1988 examination of Petitioner. *See Hughes,* 897 S.W.2d at 303. A review of the record reveals the correctness of the appeals court decision. Petitioner does not demonstrate, and this Court does not find, that the appeals court's conclusions are unreasonable in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)(2), (e)(1). Petitioner's twenty-fifth claim fails.

### M. Petitioner's Twenty–Sixth, Twenty–Seventh, Twenty–Eighth, and Twenty–Ninth Claims

 Petitioner's twenty-sixth through twenty-ninth claims argue that the prosecutor on four different occasions made improper jury arguments during the punishment phase of trial. Petitioner concedes that, with respect to the first three remarks, he did not object. The Texas contemporaneous objection rule, which provides that failure to object to jury argument waives error, is an independent and adequate state ground that bars federal habeas review. *See Sharp v. Johnson,* 107 F.3d 282, 285–86 (5th Cir.1997); *Amos v. Scott,* 61 F.3d 333, 339–41 (5th Cir. 1995). Failure to lodge contemporaneous objections relegates Petitioner to showing cause and prejudice for his procedural default, or demonstrating that the federal court's failure to review will result in a "fundamental miscarriage of justice." *Amos,* 61 F.3d at 339; *see Sharp,* 107 F.3d at 286. Petitioner fails to make such a showing. The Texas Court of Criminal Appeals noted this waiver, but in an abundance of caution looked at the merits of Petitioner's claims. Procedural bar aside, the Court notes that a failure to object is an indication that the challenged argument was not perceived by Petitioner at trial as having a substantial adverse effect, or would not naturally and necessarily be understood as advancing improper considerations. *See, e.g., Milton v. Procunier,* 744 F.2d 1091, 1095 (5th Cir.1984).

 Ignoring for the moment the procedural bar, where improper prosecutorial

argument is asserted as a basis for habeas relief, undesirable or even universally condemned prosecutorial remarks are insufficient; instead, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (citations omitted); *see King v. Puckett,* 1 F.3d 280, 286 (5th Cir.1993). The remarks in question must be shown to have been "crucial, critical, highly significant factors." *Lowery v. Estelle,* 696 F.2d 333, 342 (5th Cir.1983). Finally, Petitioner must establish that the evidence presented at trial was so insubstantial that, but for the challenged remarks, no conviction would have occurred. *See Felde v. Blackburn,* 795 F.2d 400, 403 (5th Cir.1986).

The first remark complained of concerns the prosecutor's reference to Petitioner's prior overturned conviction. Earlier in the trial, Petitioner had revealed through exhibits that he had been previously convicted.[10] In light of the overwhelming evidence against him, this singular remark which referred to a fact already known to the jury and not emphasized by objection did not prejudice Petitioner. *Cf. United States v. Tarazon,* 989 F.2d 1045, 1053 (9th Cir.1993). The second remark about which Petitioner complains concerned his lack of remorse. Petitioner argues that such comments infringe his right to remain silent, guaranteed by the Sixth Amendment. In order to prevail on this claim the jury must naturally and necessarily take the challenged remark to be a comment on the Petitioner's failure to testify. *See United States v. Wilson,* 500 F.2d 715, 721 (5th Cir.1974); *accord Rogers v. Lynaugh,* 848 F.2d 606, 609–10 (5th Cir. 1988); *Milton v. Procunier,* 744 F.2d 1091, 1095 (5th Cir.1984). However, several times during trial Petitioner himself offered evidence tending to show his remorse. Thus, rather than a direct comment on Petitioner's failure to testify, the prosecutor's remark was instead an appropriate summary of the evidence presented. Moreover, in light of the overwhelming evidence against him and

the singularity of the remark, Petitioner fails to demonstrate how this remark rendered his trial fundamentally unfair. *See United States v. Shaw,* 701 F.2d 367, 390–91 (5th Cir.1983).

The third remark challenged by Petitioner concerns the prosecutor's sympathetic reference to both the Frederick and Hughes families. Again, because Petitioner's counsel during jury argument discussed the suffering of the Hughes and Frederick families, like the previous two jury-argument challenges, Petitioner invited the prosecutor's comments. The Fifth Circuit has unequivocally held that comments regarding sympathy are appropriate in part as an invited response to defense counsel's argument. *See Nichols v. Scott,* 69 F.3d 1255, 1279–80 (5th Cir.1995). Moreover, comments such as these are not *per se* barred. *See Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). Again, Petitioner fails to demonstrate how these comments rendered his trial fundamentally unfair. The Texas Court of Criminal Appeals decision to dismiss these claims cannot be deemed unreasonable. *See* 28 U.S.C. § 2254(d).

Finally, Petitioner complains of comments concerning the veracity of Petitioner's expert. Petitioner properly objected to these comments and that objection was sustained. Moreover, the trial court instructed the jury to disregard the prosecutor's statements. As an initial matter, Petitioner again fails to demonstrate how the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *See Darden,* 477 U.S. at 181, 106 S.Ct. at 2471 (citations omitted). Furthermore, although Petitioner argues that the court's instruction to disregard the prosecutor's statements was insufficient in light of the remark's prejudicial impact, well-established authority reveals that when a cautionary instruction is given, the jury is presumed to follow it. *See Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987); *United States v. Bazan,* 807 F.2d 1200, 1205 (5th

---

**10.** Petitioner offered into evidence a copy of the judgment and execution order from his first trial.

Cir.1986). Petitioner offers insufficient evidence to rebut this presumption. The Court of Criminal Appeals so held. *See Hughes,* 897 S.W.2d at 304. Petitioner fails to demonstrate, as he must, how the appeals court decision is contrary to, or is an unreasonable application of, established law. Thus, Petitioner's twenty-sixth, twenty-seventh, twenty-eighth, and twenty-ninth claims fail.

### N. Petitioner's Thirty–Second Claim

 Petitioner's thirty-second claim of relief is based on the Fourth Amendment. Specifically, Petitioner claims that his rights were violated when the trial court refused to suppress all evidence found in the search of his car. When a state has provided a defendant with an opportunity to fully and fairly litigate a Fourth Amendment claim, that defendant may not subsequently obtain review of that issue through a habeas corpus petition. *See Stone v. Powell,* 428 U.S. 465, 491–94, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976); *Caver v. Alabama,* 577 F.2d 1188, 1191–92 (5th Cir.1978). Petitioner received such an opportunity. *See Hughes,* 897 S.W.2d at 304. Even so, it is clear, and the appeals court so held, that Petitioner had no "reasonable expectation of privacy" in the stolen car, and therefore, no Fourth Amendment violation could have occurred. *See Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979).

### O. Petitioner's Thirty–Third Claim

 In his thirty-third claim of relief Petitioner argues that his constitutional rights were violated when the trial court sustained the State's challenge for cause against veniremember Mary Ann Cervantes. Ms. Cervantes was originally accepted as a juror by both sides. However, later, while alternate jurors were being selected, Ms. Cervantes notified the trial court that she had changed her views on the death penalty. Upon questioning by the trial court, Ms. Cervantes stated that she could not answer the special issues honestly, that her feelings against the death penalty would substantially impair her ability to sit as a juror, and that her views would improperly influence any punishment decision. On the basis of these comments, the State successfully challenged Ms. Cervantes for cause.

 The standard for excusing a prospective juror for cause because of his views on the death penalty is whether the juror's views would prevent or substantially impair the performance of that juror's duties in accordance with the instructions given by the trial court and the oath taken by the juror. *See Fuller v. Johnson,* 114 F.3d 491, 501 (5th Cir.1997) (citing *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)); *Cordova v. Collins,* 953 F.2d 167, 176 (5th Cir.1992). "[N]ot all who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law." *Lockhart v. McCree,* 476 U.S. 162, 176, 106 S.Ct. 1758, 1766, 90 L.Ed.2d 137 (1986). Moreover, "[a] trial judge's finding of bias during voir dire is a determination of fact, subject to a presumption of correctness on collateral review ...." *Fuller,* 114 F.3d at 500–01; *see also Russell v. Collins,* 998 F.2d 1287, 1293–94 (5th Cir.1993). Finally, the Court must give great deference to the "trial judge who sees and hears the jurors." *Wainwright v. Witt,* 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985).

Substantial impairment has been interpreted to include evidence of both strong opposition to the death penalty and an expressed uncertainty as to whether the death penalty could be imposed if the law and facts required it. *See Russell v. Collins,* 998 F.2d 1287, 1293 (5th Cir.1993). The record reveals, and the trial court found, that Ms. Cervantes displayed both a strong opposition to the death penalty and an uncertainty as to whether she could impose it. Indeed, Ms. Cervantes explicitly stated that her feelings would substantially impair her ability to impose death. The Court concludes that Petitioner has failed to offer any reason why this Court should not afford a presumption of correctness to the determination by the trial judge that Cervantes should be excused for cause. Petitioner fails to demonstrate the

incorrectness of the trial court's decision. *See* 28 U.S.C. § 2254(d), (e). Thus, Petitioner's thirty-third claim fails.

### P. Petitioner's Thirty–Fourth and Thirty–Fifth Claims

■■■■■■ In his thirty-fourth and thirty-fifth claims, Petitioner asserts that evidence recovered during an internal DPS investigation which allegedly yielded information inconsistent with Trooper Reichert's testimony at trial was withheld at trial in violation of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963) and *Kyles v. Whitley,* 514 U.S. 419, 432, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995). Petitioner asks the Court for an evidentiary hearing to develop this evidence. Petitioner fails to identify or describe, however, the investigation to which he refers. Indeed, there is absolutely no evidence whatsoever that any such investigation was conducted, as is required by *Kyles. See Kyles,* 514 U.S. at 419, 115 S.Ct. at 1565. Moreover, because he fails to allege facts that, if proven true, would entitle him to relief, Petitioner is not entitled to an evidentiary hearing. *See Hernandez v. Johnson,* 108 F.3d 554, 561 (5th Cir. 1997)("An appellant is not entitled to a fishing expedition. The appellant must make a showing of what types of evidence he hopes to obtain."), *cert. denied,* —— U.S. ——, 118 S.Ct. 447, 139 L.Ed.2d 383 (1997); *accord Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir.1994); *Jernigan v. Collins,* 980 F.2d 292, 296 (5th Cir.1992); *Baldwin v. Blackburn,* 653 F.2d 942, 946–47 (5th Cir.1981).[11]

### V. CONCLUSION

■■■■■■ Petitioner in this case does not seek a Certificate of Appealability ("COA"). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. A COA must be issued by "a circuit justice or judge." *See id.* § 2253(c)(1). A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone. *See id.* § 2253(c)(3); *Lackey v. Johnson,* 116 F.3d 149, 151 (5th Cir.1997). Although there has been some disagreement regarding whether a District Court judge, as opposed to a Circuit judge, can issue a COA, recent pronouncements from the Fifth Circuit reveal that a District judge can do so. *See Else v. Johnson,* 104 F.3d 82, 83 (5th Cir.1997) (holding that District Courts retain authority to issue COAs for § 2254 petitions under the AEDPA, and implying that it would rule the same for COAs for § 2255 petitions).[12] Indeed, in at least one case the Fifth Circuit has held that a District Court *must* pass on the COA question before the Circuit will consider it. *See Muniz v. Johnson,* 114 F.3d 43, 44 (5th Cir. 1997). Petitioner has raised thirty-five grounds of relief in his Writ of Habeas Corpus. After an exhaustive review of his claims, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as he is required to do. Therefore, although no COA is sought from this Court by Petitioner, any such request is denied.

For the foregoing reasons, Hughes' Petition for Writ of Habeas Corpus is **DENIED,** and summary judgment is **GRANTED** in favor of Respondent. As a result, the stay of execution granted by this Court on September 12, 1997 is **VACATED.** A COA is not issued.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set out in the Court's Order issued this day, Petitioner's Writ of

---

11. If Petitioner has been afforded a full and fair hearing in state court he is still entitled to an evidentiary hearing in this Court if he can show cause and prejudice for his failure to develop the desired facts in state court, or if the failure to hold such a hearing would result in a miscarriage of justice. *See Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). Petitioner in this case has not done so.

12. Other circuits that have addressed this issue have concluded that the word "judge" is not modified by "circuit," and that the District Court has the power to issue COAs. *See, e.g., United States v. Asrar,* 108 F.3d 217, 218 (9th Cir.1997); *Houchin v. Zavaras,* 107 F.3d 1465, 1468–69 (10th Cir.1997); *Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1066–67 (6th Cir.1997); *Hunter v. United States,* 101 F.3d 1565, 1574–83 (11th Cir.1996) (en banc).

Habeas Corpus is hereby **DENIED** and all of Petitioner's claims are **DISMISSED WITH PREJUDICE.** Moreover, the Stay of Execution granted by this Court on September 12, 1997 is **VACATED.** A COA is not issued. The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**THIS IS A FINAL JUDGMENT.**